## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AARON C. MOON,

                    Petitioner,                   Case Number: 2:08-CV-13255

v.                                        HON. VICTORIA A. ROBERTS

MICHAEL CURLEY,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Aaron C. Moon filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254.  At the time he filed the petition, Petitioner was incarcerated at the Ojibway Correctional Facility in Marensico, Michigan.  He has since been released on parole.  In the petition, Petitioner challenges his convictions for possession with intent to deliver less than 50 grams of cocaine, possession with intent to deliver marijuana, possession of a firearm during the commission of a felony, and two counts of contributing to the delinquency of a minor.  He claims that trial counsel was ineffective, the prosecutor engaged in misconduct, and his rights under the Confrontation Clause were violated.

The Court denies the petition and denies a certificate of appealability.

### I.  Facts

Petitioner's convictions arise from drugs and firearms discovered during the execution of a search warrant on April 10, 2005 at 19188 Blackmoor Street in Detroit.

Officers found the southeast bedroom in the home padlocked.  They forced the door open and recovered: a triple beam scale, a smaller digital scale, a suspected bag of marijuana, a safe containing weapons (a .357 handgun and a Colt .45), a baggie containing suspected cocaine, and $900 in cash.

Police Officer Brian Russell testified that he found proof of residency papers for Petitioner on the dresser in that bedroom including a vehicle title, proof of auto insurance, and a City of Detroit moving violation.

Police Officer Lisa Shade testified that she placed Petitioner, who had been outside the home, under arrest.  She found a key in his right front pants pocket.  She entered the house and used the key to open the padlock on the southeast bedroom.

Police Officer Hughes testified that he advised Petitioner of his *Miranda* rights. Petitioner waived his rights and agreed to talk to Officer Hughes.  Officer Hughes testified that when Petitioner filled out the waiver of rights form he indicated that his address was 19188 Blackmoor.  Petitioner admitted that the drugs and weapons found in the bedroom were his.

The parties stipulated that the items seized in the room were sent to a police lab and tested as follows: 16.41 grams of powder containing cocaine, .05 grams of material containing cocaine, and .46 grams of marijuana.  The parties also stipulated that an additional package found on the bed was 154.32 grams of marijuana.

## II.  Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of

2

possession with intent to deliver less than 50 grams of cocaine, possession with intent to deliver marijuana, possession of a firearm during the commission of a felony, and two counts of contributing to the delinquency of a minor. He was sentenced to 23 months to 5 years' in prison for the cocaine conviction, 2 to 4 years' in prison for the marijuana conviction, two years' in prison for the felony-firearm conviction, and 90 days in jail for each count of contributing to the delinquency of a minor conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims: (i) Confrontation Clause violation; (ii) other acts evidence improperly admitted; and (iii) prosecutorial misconduct. Petitioner filed a *pro per* supplemental brief raising claims of ineffective assistance of counsel. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Moon*, No. 266327 (Mich. Ct. App. Feb. 15, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals, including those raised in his *pro per* supplemental brief. The Michigan Supreme Court denied leave to appeal. *People v. Moon*, No. 133613 (Mich. Nov. 21, 2007).

Petitioner then filed this habeas corpus petition. He raises the following claims:

I.    Was Petitioner's Sixth Amendment constitutional right to have the effective assistance of counsel violated when trial counsel failed to investigate, prepare evidence favorable to the Petitioner, call favorable defense witnesses, or to present a substantial defense?

II.    Was Petitioner's Sixth Amendment constitutional right to have the effective assistance of counsel violated when trial counsel failed to protect

3

Petitioner's Fourth Amendment right to be safe from illegal search and seizure, when trial counsel failed to challenge the deficient search warrant?

III.    Was Petitioner's Sixth Amendment constitutional right to have the effective assistance of counsel violated when trial counsel failed to challenge whether the alleged confession was made and/or signed voluntarily?

IV.    Was Petitioner denied his due process rights due to flagrant, persistent, and prejudicial prosecutorial misconduct and was Petitioner's Sixth Amendment constitutional right to have the effective assistance of counsel violated when trial counsel failed to object to the prosecutor's misconduct?

V.    Was Petitioner's Sixth Amendment constitutional right to have the effective assistance of counsel violated when trial counsel failed to properly cross-examine a prosecution witness and also failed to submit the officers' preliminary complaint reports into evidence?

VI.    Were Petitioner's confrontation clause rights violated when the trial court allowed the out-of-court statements made to Sgt. Rochon by Petitioner's mother to be admitted?

### III. Discussion

### A. Standard of Review

Petitioner's claims are reviewed against the standards established by the

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.

1214 (AEDPA). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable

4

determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme

5

malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th

Cir. 1998).

## B.  Ineffective Assistance of Counsel Claim

Petitioner's first three and his fifth habeas claims allege ineffective assistance of trial counsel.  Specifically, Petitioner argues that trial counsel was ineffective in failing to: (i) investigate, present favorable evidence, or present a substantial defense; (ii) challenge the search warrant; (iii) challenge the admissibility of his confession; (iv) properly cross-examine a prosecution witness; (v) submit officers' complaint reports into evidence and (vi) object to prosecutorial misconduct.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" *Tinsley v. Million*, 399 F.3d 796, 802 (6th Cir. 2005), *quoting Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

7

"Because advocacy is an art and not a science, . . . [counsel's] strategic choices must be respected," if they were "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 at 690.  The Supreme Court explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689.

"Surmounting *Strickland's* high bar is never an easy task."  *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve.  *Strickland*, 466 U.S. at 689-90.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.  *Strickland*, 466 U.S. at 690.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct.

2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420.

*Richter*, 131 S. Ct. at 788.

## 1.  Failure to Investigate

First, Petitioner argues that his attorney was ineffective for failing to investigate, present favorable evidence, or present a substantial defense.  Petitioner argues that counsel should have called several witnesses to testify and should have presented evidence that he could not have been involved in drug transactions because he was detained at the 9th precinct for traffic warrant violations.

The Michigan Court of Appeals held that Petitioner failed to establish that counsel was ineffective.  The Michigan Court of Appeals stated, in relevant part:

> [T]his court will not substitute its judgment for that of counsel regarding matters of trial strategy including decisions regarding whether to call witnesses. . . . Nothing in the record indicates what investigating defense counsel did or what more he could have learned.  Nothing in the record indicates what any of the witnesses defendant wanted called would have testified to and, while defendant takes issue with trial counsel's decision to rely on weaknesses in the prosecution's case, nothing in the record indicates anything more trial counsel could have done. . . . [D]efendant's argument on the basis of trial counsel's failure to act finds no support in the record.

*Moon*, slip op. at 4.

"[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material."

*Hutchison v. Bell*, 303 F.3d 720, 748-49 (6th Cir.2002) (*citing Austin v. Bell*, 126 F.3d

843, 848 (6th Cir. 1997) and *Martin v. Mitchell*, 280 F.3d 594, 608 (6th Cir. 2002)). The

state court's opinion is neither contrary to, nor an unreasonable application of, *Strickland*.

The two affidavits referenced by Petitioner as supporting his defense offer little if any

substantive support.  One of the potential witnesses, Petitioner's ex-girlfriend, states in

her affidavit that she visited Petitioner regularly when he lived with his mother, but that

she and Petitioner separated sometime before February 2005.  Thus, her knowledge about

the rooms over which Petitioner exercised control in his mother's house is limited to a

time period preceding his arrest.  The other potential witness whose affidavit is attached

to the petition, Ben Clapp, states that he was at Petitioner's mother's home when

Petitioner was arrested and that he did not see police remove a key from Petitioner's

pocket.  Even assuming counsel should have called these witnesses, given the strength of

the evidence against Petitioner, there is not a reasonable probability that, had counsel

called these witnesses, the result of the proceeding would have been different.

     With respect to Petitioner's arrest for a traffic warrant, Petitioner argues that the

records for this arrest show he could not have been the individual engaging in the drug

transactions.  Petitioner does not dispute that he was present when the raid occurred or

that he was the individual who signed his statement to the police.  Therefore, the arrest

report would not have established that Petitioner could not have committed the charged

offenses.

     Petitioner fails to present additional evidence or argument showing how counsel's

alleged failure to investigate would have resulted in evidence tending either to exculpate

him or assist in his defense in order to demonstrate a "reasonable probability" of a different outcome.  The Court denies relief on this claim.

## 2. Failure to Challenge the Search Warrant

Second, Petitioner argues that counsel was ineffective for failing to file a motion to quash the search warrant for a lack of probable cause.  The Michigan Court of Appeals held that counsel's conduct was not ineffective because counsel's decision not to move to quash the search warrant was clearly the result of reasoned trial strategy.  The Michigan Court of Appeals explained, in relevant part:

> [T]rial counsel used the search warrant to argue that someone other than defendant was dealing drugs out of the house.  The police officer's affidavit leading to the warrant described an unknown black male, age 20 to 25, medium complexion, 5'9" and 190 pounds engaging in practices the police officer believed, on the basis of his experience, to be drug deals.  During the trial, the police officer conceded that defendant did not match the description of the unknown male dealing drugs.  While trial counsel's strategy failed, we conclude that trial counsel's performance was not deficient on the basis that he chose to use the search warrant to suggest that defendant was innocent instead of attempting to quash it.

*Moon*, slip op at 4-5.

The right to the effective assistance of counsel does not create "expectation that competent counsel will be a flawless strategist or tactician.  An attorney may not be faulted for a reasonable miscalculation." *Richter*, 131 S. Ct. at 791.  "Although courts may not indulge post-hoc rationalization for counsel's decision making that contradicts the available evidence of counsel's actions neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.  There is a strong presumption that

11

counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Id.* at 790 (quotations omitted). Although counsel's strategy for handling the search warrant may not have succeeded, there is a reasonable argument that counsel's decision to proceed in the manner he did, satisfied the *Strickland* standard. Habeas relief is denied on this claim.

### 3. Failure to Challenge Admissibility of Confession

Next, Petitioner argues that counsel was ineffective for failing to challenge the admissibility of his confession. Petitioner argues that his confession should have been suppressed because the police threatened that they would charge his mother with possession of the drugs and take away her children if he did not confess. The Michigan Court of Appeals held that counsel was not ineffective in failing to move to suppress the confession; such a motion would have been meritless. The Michigan Court of Appeals reasoned that the confession would have been meritless because the police testified that they did not make threats, and Petitioner signed and initialed his rights form.

Petitioner offers nothing other than his own argument to support his claim that he was pressured to confess. It is at least arguable that a reasonable attorney, acting competently, could decide that Petitioner's self-serving testimony weighed against contrary police officer testimony, and a signed consent form would not result in the suppression of Petitioner's confession. A reasonable attorney may decide to avoid activities, e.g., filing a futile motion to suppress, that would distract the attorney from more important duties. *Richter*, 131 S. Ct. at 789. Defense counsel was "entitled to

12

formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id.*

Because there is a reasonable argument that counsel satisfied *Strickland's* deferential standard, the Court concludes that the state court's decision was not an unreasonable application of *Strickland*.

### 4. Cross-examination of Witness and Submission of Preliminary Complaint

Petitioner next claims that his attorney was ineffective in his handling of prosecution witness police officer Cregg Hughes. Officer Hughes was involved in executing the search warrant at Petitioner's mother's home. He testified that in the statement Petitioner gave while still at his mother's home, Petitioner admitted to having, among other drugs, heroin in his room. At the start of the preliminary examination, the prosecution asked for a continuance because it had not received the final lab report regarding the suspicious substances seized from the home. The trial court denied the continuance and the prosecution was forced to rely on the preliminary field tests performed on the substances. During the preliminary examination, the police officer who did the field-test testified that the package suspected to be heroin tested inconclusive for heroin. As a result, the prosecution dismissed the heroin-related charge. Petitioner argues that his attorney, therefore, should have cross-examined Officer Hughes using this preliminary examination testimony and Officer Hughes' written report to call into question his written report indicating that a package of suspected heroin was seized from the home, and to question the authenticity of Petitioner's entire confession which

13

included an admission to possession of heroin.

The Michigan Court of Appeals held that counsel was not ineffective.  First, the state court held that the preliminary complaint report would not have been admissible under state evidentiary rules.  Second, the state court held that counsel's cross-examination of Officer Hughes was adequate.  This Court agrees; it was not unreasonable for counsel to choose not to focus on the heroin after that charge had been dismissed.

### 5.  Failure to Object to Prosecutorial Misconduct

Finally, Petitioner argues that counsel was ineffective for failing to object to the prosecutor's misconduct during closing and rebuttal arguments.  As discussed below, the Michigan Court of Appeals held that, although some of the prosecutor's comments were improper, Petitioner's due process rights were not violated because he was not prejudiced by the comments.  The Michigan Court of Appeals also held that, although counsel should have objected to the comments, Petitioner failed to demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  *Moon*, slip op. at 6.

Considering the evidence against Petitioner and the content of the jury instructions, both of which are discussed in more detail below, the Court finds that the state court's conclusion was not contrary to, or an unreasonable application of, *Strickland*.

### C.  Prosecutorial Misconduct Claim

In his fourth claim, Petitioner argues that the prosecutor committed misconduct during closing and rebuttal argument and that counsel was ineffective for failing to object.

14

Petitioner claims that the prosecutor shifted the burden of proof, stated facts not in evidence, vouched for the prosecution's evidence and witnesses, and denigrated the role of defense counsel by suggesting that trial counsel was trying to mislead the jury.

It is well-established that prosecutors must "'refrain from improper methods calculated to produce a wrongful conviction.'" *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). However, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct may warrant habeas corpus relief only if the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett*, 117 F.3d at 964 (quoting *Serra v. Mich. Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. The Sixth Circuit applies a four-factor test to any inappropriate prosecutorial conduct to

determine whether it was flagrant:  "(1) whether the evidence against the defendant was

strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice

the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4)

whether the remarks were made deliberately or accidentally."  *Id.* (citation omitted).

"[T]he Supreme Court has clearly indicated that the state courts have substantial

breathing room when considering prosecutorial misconduct claims because 'constitutional

line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'"  *Slagle v.*

*Bagley*, 457 F.3d 501, 516 (6th Cir.2006), *cert. denied*, 551 U.S. 1134, (2007) (*quoting*

*Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).

 The Michigan Court of Appeals held that the prosecutor's comments that the

defense is "suppose[d] to create reasonable doubt," and that defense counsel was engaged

in diversionary tactics, were improper.  However, the court declined to the reverse on this

ground because Petitioner was not prejudiced or denied a fair trial by these improper

comments.  The state court reasoned that the prosecutor, while improperly stating that the

defense had to create a reasonable doubt, also informed the jury that the prosecution had

to prove the case beyond a reasonable doubt.  Defense counsel directly refuted the

prosecution's incorrect statement about the burden of proof and discussed clearly and at

length the presumption of innocence and the prosecution's burden.  The trial court also

specifically instructed the jury about the burden of proof.  Finally, the burden-of-proof

argument was isolated.

 Based upon the foregoing considerations, this Court agrees with the Michigan

Court of Appeals that the prosecutor's isolated, incorrect remark regarding the burden of proof, did not rise to the flagrant level needed to justify reversal.

The Michigan Court of Appeals also held that the prosecutor committed misconduct by stating several times that defense counsel was engaged in diversionary tactics because he was suggesting that defense counsel was intentionally trying to mislead the jury.  Nevertheless, the court found that reversal was not warranted because Petitioner was not prejudiced by the misconduct:

> The evidence against defendant was overwhelming in this case and he cannot meet his burden of showing that the prosecutorial misconduct prejudiced him.  Defendant confessed to possessing the drugs and guns. The drugs and guns were found in a locked room and defendant had the key.  Defendant's documents were found in the room with the drugs and guns.  Two scales were also found in the room, one of which had cocaine residue on it.

*Moon*, slip op. at 3-4.

This Court agrees that the strength of the evidence against Petitioner and the trial court's instructions that the jury must base its decision on the evidence, weigh against finding that the prosecutor's statements violated Petitioner's due process rights.  *Byrd v. Collins*, 209 F.3d 486, 533 (6th Cir. 2000).

The Court concludes that the state court did not unreasonably apply Supreme Court precedent when it held that Petitioner was not deprived of a fair trial by this and the remaining claims of prosecutorial misconduct.  Habeas relief is denied

### D.  Confrontation Clause Claim

Finally, Petitioner argues that the trial court admitted out-of-court statements made

17

by his mother to the police in violation of his rights under the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.* at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Id.* at 405, (*quoting Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965)). In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable. Although Crawford did not precisely define the term "testimonial," it emphasized that "[s]tatements taken by police officers in the course of interrogations are ... testimonial under even a narrow standard." *Id*. at 52.

The Michigan Court of Appeals evaluated this claim under the standard established in *Crawford* and held that Petitioner's mother's statements were testimonial

and it was clear error for them to be admitted without a showing that she was unavailable to testify and that defendant had a prior opportunity to cross-examine her.  This Court agrees.  *See United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir.2004) (finding statement to an officer during execution of search warrant testimonial).

Confrontation Clause violations are subject to harmless-error analysis.  *Delaware v. Van Arsdall*, 475 U.S. 673, 682 (1986).  In a habeas proceeding, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  Habeas courts must apply this standard regardless of the harmless-error standard applied by the state court or whether the state court undertook harmless error review at all.  *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

The state court undertook a harmless error analysis and held that the error was harmless:

> [D]efendant's mother stated that the southeast bedroom belonged to defendant.  If that statement had not been introduced, the outcome of the lower court proceedings would have been the same.  Defendant confessed that the drugs and guns found in the bedroom were his.  Defendant's name was on documents found in the room.  Defendant was found with a key to the padlock to the door.  In light of the overwhelming evidence establishing that the southeast bedroom belonged to defendant, we conclude that defendant was not prejudiced by the admission of his mother's statements.

*Moon*, slip op. at 2.

The Court finds the same facts considered by the state court to be relevant to its harmless error analysis.  Most notably, Petitioner confessed that the drugs and guns found

19

in the bedroom were his and the key to the padlock was found in his pocket.

The Court concludes that the admission of Petitioner's mother's statement did not have a substantial and injurious effect on the jury's verdict.

## IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court denies a certificate of appealability.

## V.  Conclusion

The petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

A certificate of appealability is **DENIED**.

**IT IS ORDERED.**

                                              /s/ Victoria A. Roberts

                                           Victoria A. Roberts
                                           United States District Judge

Dated:  February 4, 2011

| The undersigned certifies that a copy of this document was served on the attorneys of record and Aaron Moon  by electronic means or U.S. Mail on February 4, 2011. |
| --- |
| s/Linda Vertriest<br>Deputy Clerk |